UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

NATASHA LASSITER-GARNER, PERSONAL
REPRESENTATIVE OF THE ESTATE OF ADABELL
GARNER,
                                    Plaintiff,
V.
NOAH SCHOENBERG, M.D.,
KEVIN WILSON, M.D.,
FRANKLIN FRIEDMAN, M.D.,
PRIANKA CHAWLA, M.D.
FURMAN WALLS, M.D. AND
UNITED STATES OF AMERICA,
                                    Defendants.

## *COMPLAINT*

### Parties

1.      Plaintiff Natasha Lassiter-Garner, personal representative for the Estate of Adabell
Garner, is an individual who resides in Dorchester, Suffolk County, Massachusetts.

2.      Defendant, Noah Schoenberg, M.D. is a physician licensed to practice in the
Commonwealth of Massachusetts.

3.      Defendant, Kevin Wilson, M.D. is a physician licensed to practice in the
Commonwealth of Massachusetts.

4.      Defendant, Franklin Friedman, M.D. is a physician licensed to practice in the
Commonwealth of Massachusetts.

5.      Defendant, Prianka Chawla, M.D. is a physician licensed to practice in the
Commonwealth of Massachusetts.

6.      Defendant, Furman Walls, M.D. is a physician licensed to practice in the
Commonwealth of Massachusetts.

7.      Defendant, United States of America is the appropriate Defendant named in place
of its agents, servants and employees, including but not limited to Amanda Luong, N.P., Nsa
Henshaw, M.D., Judith Loh, M.D., Julita Mir, M.D., Kathryn Harris, M.D., Vasileia Varvarigou,
M.D. and DotHouse Health, Inc., located in Dorchester, Suffolk County, Massachusetts, under the
Federal Tort Claims Act.

**Facts Common to All Counts**

8.      This is a complaint for damages arising from substandard medical care rendered to Adabell Garner by Noah Schoenberg, M.D., Kevin Wilson, M.D., Franklin Friedman, M.D., Prianka Chawla, M.D., Furman Walls, M.D. and the United States of America (hereinafter, "the defendants").  Under the Federal Tort Claims Act, the United States of America is the appropriate defendant named in place of its agents, servants and employees, including but not limited to Amanda Luong, N.P., Nsa Henshaw, M.D., Judith Loh, M.D., Julita Mir, M.D., Kathryn Harris, M.D., Vasileia Varvarigou, M.D. and DotHouse Health, Inc., which is a federally funded health clinic.  As a direct result of the substandard care rendered by the defendants, Ms. Garner suffered a premature and preventable death from metastatic lung cancer on January 15, 2019 at the age of 63.

9.      The Jurisdiction of this Court is lawful under 28 U.S.C. § 1346(b) and proper as the plaintiff lives in Massachusetts.

10.      Venue is proper within this district under 28 U.S.C. § 1402(b) as the acts complained of occurred in the District of Massachusetts.

11.      The plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act and all statutory prerequisites to the filing of this complaint have been satisfied.

12.      As of July 2013, Ms. Garner was employed as a fifth-grade teacher.  She was widowed and had three children.  Ms. Garner received her primary medical care at DotHouse Health, in Dorchester, MA.  Ms. Garner's past medical history included severe chronic obstructive pulmonary disease (COPD), trigeminal neuralgia, and diabetes mellitus. Additionally, she had a significant cigarette smoking history; she had been a daily cigarette smoker x 45 years. She quit smoking in April, 2016.

13.      On 7/24/13, Ms. Garner, then 57 years old, presented to DotHouse Health to establish her primary care as a new patient with Amanda Luong, N.P.  Nurse Practitioner Luong noted that Ms. Garner was due for her complete physical examination.  She noted Ms. Garner was a daily cigarette smoker who described her lungs as "crappy," but did not record Ms. Garner's pack year history.  Nurse Practitioner Luong recorded Ms. Garner's family history as significant for lung cancer in her   father who smoked cigarettes.  Nurse Practitioner Luong noted she questioned if Ms. Garner had COPD (chronic obstructive pulmonary disease) vs. asthma and considered a COPD work up.  Nurse Practitioner Luong ordered adding a Proair inhaler as needed in addition to using the Flovent inhaler, and scheduled a follow up in 2-3 weeks.

14.      On 8/7/13, Ms. Garner returned for her follow up with Nurse Practitioner Luong, who noted Ms. Garner was confused about her inhaler use and had no difficulty breathing.  She noted that Ms. Garner cut down on smoking and her lungs were clear to auscultation.  Nurse Practitioner Luong documented that Ms. Garner likely had a component of COPD.

15.     On 10/16/13, Ms. Garner presented to Nurse Practitioner Luong for evaluation after she woke up coughing up phlegm with a little blood. Nurse Practitioner Luong noted Ms. Garner's past medical history of severe COPD, and her pulmonary function test (PFT) from 2011 showed severe air trapping and hyperinflation consistent with emphysema. She noted that Ms. Garner was confused again about her inhalers and had not been using them as directed. Nurse Practitioner Luong noted that Ms. Garner's lungs were clear and attributed the coughing up blood to a nosebleed. Nurse Practitioner Luong reviewed inhaler use with Ms. Garner, but did not offer, order, or recommend a CT scan of her chest to rule out malignancy.

16.     As of December 2013, the U.S. Preventative Services Task Force had issued a final recommendation statement on screening for lung cancer. The recommendation was based upon a complete review of the medical evidence including the results of a recent large clinical trial. The recommendation statement applied to adults aged 55-80 years old with a smoking history of 30 pack years or more who are currently smoking or have quit within the past 15 years, of which screening is to be done with an annual low dose CT scan. The statement was issued to providers including primary care and family practitioners to assist them with implementing a lung cancer screening program for their patients. Adabell Garner met these criteria.

17.     On 1/10/14, Ms. Garner presented to DotHouse Health for evaluation by Nurse Practitioner Luong for complaints of two weeks of a worsening productive cough with dark green mucus and fatigue. She also reported a fever of 101.4°F and increased shortness of breath when walking. Nurse Practitioner Luong noted that on respiratory exam Ms. Garner had poor air movement, her lungs were clear to auscultation, and she had an oxygen saturation level of 96%. Nurse Practitioner Luong's impression was COPD exacerbation and encouraged Ms. Garner to use Flovent twice a day and Proair as needed, and prescribed a 5 day course of Azithro. Nurse Practitioner Luong noted if her breathing worsened, Ms. Garner should return and would likely need a chest x-ray, but did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

18.     On 1/23/14, Ms. Garner returned for a follow up with Nurse Practitioner Luong for her COPD exacerbation and diabetes mellitus. Nurse Practitioner Luong noted Ms. Garner's lungs were clear to auscultation and the COPD exacerbation had resolved. Nurse Practitioner Luong did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

19.     On 4/27/14, Ms. Garner presented to the Boston Medical Center emergency department with chest pain, transient dysarthria, and shortness of breath. Ms. Garner was diagnosed with a small left periventricular cerebrovascular accident and admitted, but was noted to have no residual deficits from her ischemic event. She was started on aspirin, Lipitor, and Spiriva, and was noted she needed a cardiac echo, Holter monitoring, and PFTs for evaluation of her COPD.

20.     On 5/14/14, Ms. Garner had a follow up evaluation with Nurse Practitioner Luong for her recent hospital admission and COPD exacerbation. Nurse Practitioner Luong noted that Ms. Garner reported coughing for a couple of days and had difficulty breathing. She noted that on physical exam Ms. Garner had diffuse expiratory wheezes in her lung fields and that Ms. Garner had an exacerbation of COPD with an increase in sputum production and an increase in her work

of breathing.  She prescribed a Z-Pak along with continuing her Spiriva.  Nurse Practitioner Luong noted that Ms. Garner had PFTs in the past that showed severe COPD and emphysema, and she would discuss with the supervising provider to see if Ms. Garner was appropriate to refer for repeat PFTs.  Nurse Practitioner Luong did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

21.     On 6/14/14, Ms. Garner had a follow up evaluation with Nurse Practitioner Luong for her COPD.  Nurse Practitioner Luong noted that Ms. Garner was using Spiriva when symptomatic, not using it every other day, and was still smoking.  Nurse Practitioner Luong noted that on physical exam Ms. Garner's lungs were clear to auscultation.  Nurse Practitioner Luong planned to manage Ms. Garner's COPD by having her continue to use Spiriva daily.  Nurse Practitioner Luong did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

22.     On 8/14/14, Ms. Garner returned for a complete physical examination with Nurse Practitioner Luong.  Nurse Practitioner Luong noted that on respiratory exam, Ms. Garner did not have a cough, wheeze, or shortness of breath.  Nurse Practitioner Luong did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

23.     On 12/18/14, Ms. Garner was evaluated by Nurse Practitioner Luong for a disability placard due to her arthritis and COPD.  Nurse Practitioner Luong noted she planned to manage Ms. Garner's COPD by having her continue to use Spiriva daily.  Nurse Practitioner Luong did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

24.     On 2/19/15, Ms. Garner had an evaluation with Nurse Practitioner Luong with complaints of worsening dyspnea despite using Spiriva and requested a chest x-ray.  Ms. Garner also reported she increased her smoking and was feeling more tired and fatigued than before.  Ms. Garner then underwent a chest x-ray that revealed hyperinflation of the lungs, no focal airspace opacity, and a normal cardiomediastinal silhouette.  Nurse Practitioner Luong did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

25.     On 4/1/15, Ms. Garner presented to the DotHouse Urgent Care clinic with complaints of cough and a runny nose for 2 weeks.  She was evaluated by internal medicine physician Nsa Henshaw, M.D., who noted Ms. Garner's history of smoking and severe COPD.  Dr. Henshaw noted that on physical exam Ms. Garner's lungs were clear to auscultation and planned to treat her with a course of amoxicillin, ibuprofen, and Sudafed.  Dr. Henshaw did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

26.     On 5/17/15, Ms. Garner presented to the Tufts Medical Center emergency department with complaints of trigeminal neuralgia, wheezing, and a headache.  She was evaluated by medical resident Prianka Chawla, M.D. and emergency medicine physician Franklin Friedman, M.D.  Ms. Garner's history of smoking was noted and Dr. Chawla ordered a chest x-ray.  The chest x-ray revealed a focal 8 mm opacity in the left upper lung projecting between the left posterior lateral sixth and seventh ribs.  Further evaluation with a chest CT scan to exclude an underlying pulmonary nodule was recommended, and it was noted it could be done on an outpatient basis.  Dr. Chawla was informed of the findings by the radiologist who interpreted the scan.  Dr. Chawla

and Dr. Friedman did not record the chest x-ray findings in the physician chart, and they did not record informing Ms. Garner of her need for a follow up CT scan to rule out the potential pulmonary nodule.  Ms. Garner was then discharged after it was noted her symptoms had improved.

27.     On 5/18/15, emergency medicine physician Furman Walls, M.D. faxed a visit summary to family medicine physician Judith Loh, M.D. regarding Ms. Garner's recent visit to the Tufts Medical Center emergency department.  Dr. Walls noted in the summary that Ms. Garner had been diagnosed with COPD exacerbation and had undergone a chest x-ray.  Dr. Walls did not record in the summary that Ms. Garner had a potential pulmonary nodule that required a CT scan to evaluate.  Dr. Loh did not request the chest x-ray report listed on the visit summary and did not offer, order, or recommend a low dose CT scan of her chest to evaluate for a pulmonary nodule or screen for lung cancer.

28.     On 5/20/15, Ms. Garner was contacted by DotHouse Health for a follow up call, reported that she felt better, and requested an appointment with Nurse Practitioner Luong, which was scheduled for 7/3/15.  Nurse Practitioner Luong noted that Ms. Garner had been to the ER, was diagnosed with COPD exacerbation, and would obtain the records.  Tufts Medical Center then faxed the Physician and Nurse Charts from Ms. Garner's recent visit to DotHouse Health, which did not include the chest x-ray interpretation recommending a CT scan to evaluate a potential nodule.  Nurse Practitioner Luong did not request the chest x-ray report listed on the visit summary from Dr. Walls, and did not offer, order, or recommend a low dose CT scan of her chest to evaluate for a pulmonary nodule or screen for lung cancer.

29.     On 7/3/15, Ms. Garner had her follow up evaluation with Nurse Practitioner Luong and had complaints of tiredness and fatigue.  Nurse Practitioner Luong planned to check Ms. Garner's complete blood count, refer her to a pulmonary specialist, and continue to have her use her Spiriva and Albuterol inhalers as needed.  Nurse Practitioner Luong did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

30.     On 8/25/15, Ms. Garner presented to Boston Medical Center where she was evaluated by pulmonologist Kevin Wilson, M.D. and pulmonary and critical care fellow, Noah Schoenberg, M.D.  Dr. Schoenberg noted Ms. Garner had very severe COPD and was referred by her primary care provider for further management.  He noted that Ms. Garner had a greater than 45 pack year history of tobacco abuse, a chronic productive cough, and occasional dyspnea. Her physical exam revealed a SpO2 of 96% and poor air movement in her lungs bilaterally.  It was noted her pulmonary function tests revealed severe obstructive disease and severe air trapping. Ms. Garner was assessed with very severe COPD (Gold Stage 4).  Dr. Schoenberg instructed Ms. Garner to use her Spiriva daily rather than intermittently, added Advair twice a day to her medication regimen, and continued her Albuterol inhaler.  Ms. Garner was advised to stop smoking and offered pulmonary rehabilitation.  Ms. Garner was also noted to have back pain that had resolved at the time of the appointment.  Dr. Schoenberg planned to obtain a chest x-ray to evaluate for any infiltrates.  Dr. Wilson noted he and Dr. Schoenberg formulated the assessment and plan together.  Ms. Garner then underwent a chest x-ray at Boston Medical Center which revealed no acute cardiopulmonary process and the lungs were clear.  Dr. Schoenberg and Dr. Wilson did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

31.    On 10/22/15, Ms. Garner presented to DotHouse for a complete physical examination with Nurse Practitioner Luong. Nurse Practitioner Luong's respiratory examination for Ms. Garner found no accessory muscle use and her lungs were clear to auscultation. She noted in her impression and plan that Ms. Garner's COPD was not optimally controlled and she was still smoking. Nurse Practitioner Luong advised Ms. Garner to restart the Advair twice a day and to use her Spiriva daily with the Albuterol as needed. Nurse Practitioner Luong did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

32.    On 3/3/16, Ms. Garner returned for a follow up exam with Nurse Practitioner Luong. Ms. Garner complained of having more fatigue than usual and wanted to quit smoking. Nurse Practitioner Luong advised Ms. Garner to use both Spiriva and Advair daily to control her symptoms so she would not have to use Albuterol as often. Ms. Garner was to start on nicotine patches, and Nurse Practitioner Luong advised Ms. Garner to have family members check to see if she snored and to consider a sleep study. Nurse Practitioner Luong did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

33.    On 5/30/17, Ms. Garner presented to DotHouse Urgent Care with complaints of cough and congestion and was evaluated by internal medicine physician Julita Mir, M.D. Ms. Garner had a cough with green sputum, shortness of breath, and chills for approximately one week. Ms. Garner's vitals were recorded as SpO2 was 92%, pulse 121, and temperature 101.5°F. Rales were noted in the left base of her lung upon auscultation. Ms. Garner's heart rate and oxygen saturation level improved after she received a nebulizer treatment. Dr. Mir documented that she suspected left lower lobe pneumonia. Ms. Garner's inhalers were refilled, she was prescribed a 7 day course of Levaquin, and was to return the next day to be re-evaluated. Dr. Mir did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

34.    On 6/1/17, Ms. Garner returned to DotHouse Urgent Care for follow up and was evaluated by internal medicine physician Kathryn Harris, M.D. Ms. Garner reported she felt better without a fever, but still had a cough, dyspnea at baseline, and was not back to usual. Her SpO2 level was recorded as 93% and her lung sounds were diminished throughout, without rales or rhonchi. Ms. Garner was to follow up with her primary care provider. Dr. Harris did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

35.    On 8/17/17, Ms. Garner presented to DotHouse Adult Medicine with complaints of a headache and was evaluated by internal medicine physician Vasileia Varvarigou, M.D. Dr. Varvarigou noted Ms. Garner's history of COPD and that she was not on home oxygen. Ms. Garner's oxygen saturation level was recorded as 96% and on physical examination her breath sounds were not decreased and she had no rhonchi or rales. Dr. Varvarigou did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

36.    On 2/14/18, Ms. Garner presented to DotHouse with complaints of shortness of breath and was evaluated by Dr. Henshaw. Dr. Henshaw noted Ms. Garner's symptoms started six days earlier with chest tightness and cough with blood in her sputum the day before and that morning. Her vitals were recorded as pulse 101, temperature 100.7°F, and SpO2 95%. On physical examination, Ms. Garner was noted to have wheezes in her lungs. She was diagnosed with influenza B with wheezing and a cough. She received a nebulizer treatment, Tamiflu, and a chest

x-ray.  The chest x-ray revealed normal lungs and pleura with hyperinflated, but clear lungs and no acute osseous abnormality.  Dr. Henshaw did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

37.     On 7/30/18, Ms. Garner presented to DotHouse with complaints of difficulty breathing and edema.  She was evaluated by Dr. Varvarigou who noted that Ms. Garner had not seen a pulmonary specialist in three years.  Ms. Garner reported that she had been feeling more short of breath lately and that the inhalers were not working.  Her oxygen saturation level was recorded as 97% and she was noted to have normal breath sounds, trace ankle edema, and oral candidiasis.  Dr. Varvarigou referred Ms. Garner back to the Boston Medical Center pulmonary clinic for her COPD.  Dr. Varvarigou did not offer, order, or recommend a low dose CT scan of her chest to screen for lung cancer.

38.     On 8/9/18, Ms. Garner presented to the pulmonary clinic at Boston Medical Center.  Ms. Garner reported that she noticed worsening breathing which had accelerated over the past 6 months and her dyspnea was severe enough that she got short of breath with activities of daily living, like dressing/undressing and showering.  Ms. Garner was noted to meet the criteria for CT lung cancer screening.  She was planned to undergo repeat PFTs and a low dose CT scan for both diagnostic and lung cancer screening purposes.

39.     On 10/9/18, Ms. Garner was evaluated by Dr. Varvarigou for her complete physical examination.  Dr. Varvarigou noted that Ms. Garner was seen by pulmonology for her COPD as her breathing had worsened over the past year.  Dr. Varvarigou planned for Ms. Garner to have additional testing including PFTs and a low dose CT scan for lung cancer screening.

40.     On 11/5/18, Ms. Garner presented to the Boston Medical Center emergency department after she fell at home and could not get up.  She underwent a CT scan of her chest, abdomen, and pelvis which revealed a spiculated 3.5 cm enhancing mass in the right lower lobe of the lung concerning for malignancy, either primary or metastatic.

41.     On 11/7/18, Ms. Garner was transferred to Massachusetts General Hospital for further workup and oncology and orthopedic care.  Upon admission, Ms. Garner reported 2 weeks of fatigue and a 12 lbs. weight loss in the setting of decreased appetite.  It was noted that Ms. Garner was scheduled for a low dose screening CT that week, which had been ordered by outpatient pulmonology.

42.     On 11/8/18, Ms. Garner underwent a CT scan of her chest which revealed a heterogeneously enhanced right lower lobe mass, that measured 3.2 cm and had broad contact with the right para-aortic pleura, concerning for primary lung cancer.  It also revealed multifocal clustered small nodules and tree-in-bud opacities that warranted follow-up, a soft tissue nodule in the anterior mediastinum measuring up to 2.3 cm that could be metastasis or a thymic lesion, and nodules on the adrenals that represented left adrenal metastasis and likely right adrenal metastasis.

43.     On 11/9/18, Ms. Garner underwent an open biopsy and retrograde intramedullary nailing as the spiral fracture of her left femur was suggestive of a pathologic lesion.  During the

procedure, bone marrow fragments were retrieved and sent for frozen section analysis, and the pathology showed metastatic adenocarcinoma.

44.     On 11/12/18, Ms. Garner's imaging and pathology were reviewed and she was diagnosed with Stage IV lung cancer.

45.     On 11/14/18, Ms. Garner underwent a PET-CT scan that revealed a heterogeneously enhancing mass in the medial basal segment of the right lower lobe measuring approximately 3.4 x 2.4 x 4.2 cm.  It also revealed small bilateral lung nodules and a lytic lesion within the left aspect of the T6 vertebral body that measured approximately 14 mm.

46.     On 12/3/18, Ms. Garner was started on systemic chemotherapy after completing radiation treatments to her left leg.  On 12/6/18, Ms. Garner was discharged with a plan to continue chemotherapy on an outpatient basis.

47.     On 12/24/18, Ms. Garner was admitted to Massachusetts General Hospital with increasing dyspnea and a new loculated right-sided pleural effusion.  On 12/25/18, two chest tubes were placed for her dyspnea and new oxygen requirement, which relieved her dyspnea and were removed 12/27/18.  On 12/28/18, Ms. Garner was started on weekly doses of docetaxel.  On 1/7/19, Ms. Garner underwent a thoracentesis after developing increasing dyspnea.  Radiation oncology was consulted and felt that Ms. Garner would benefit from radiation to her spine and adjacent rib metastases, but she could not lie flat to tolerate the radiation.  Due to the progression of the metastases and overall poor prognosis, Ms. Garner transitioned to comfort measures only on 1/11/19.

48.     On 1/15/19, Adabell Garner died.  Her cause of death is listed as metastatic lung adenocarcinoma and chronic obstructive pulmonary disease.

49.     Annual lung cancer screening for high risk individuals with low dose chest CT scan reduces their risk of developing advanced disease and dying from lung cancer.  A low dose chest CT scan is more sensitive than an x-ray and can detect lung cancer in its earliest stages.  Signs and symptoms of early lung cancer include, but are not limited to, persistent cough, shortness of breath, coughing up blood, and/or wheezing.  Moreover, smokers with a family history of lung cancer are at a significantly increased risk to develop lung cancer.

50.     In December 2013, the U.S. Preventative Services Task Force (USPSTF) issued a final recommendation statement on screening for lung cancer.  The recommendation was based upon a complete review of the medical evidence including the results of a recent large clinical trial. The recommendation statement applied to adults aged 55-80 years old with a smoking history of 30 pack years or more who are currently smoking or have quit within the past 15 years, of which screening is to be done with an annual low dose CT scan.  The statement was issued to providers including primary care and family practitioners to assist them with implementing a lung cancer screening program for their patients.  Adabell Garner met these criteria.

51.     Additionally, incidental findings on imaging, including chest x-rays, that are concerning for malignancy must be properly followed up per the radiologist's recommendations. Such recommendations must be relayed directly to the patient as well as their proper outpatient care providers, and inpatient records must be reviewed for any follow up recommendations by outpatient care providers.

52.     The prognosis for a patient with lung cancer largely depends on the size of the tumor and the spread of the disease at the time of diagnosis. Lung cancer is most amenable to cure if detected and diagnosed at an early stage, thus significantly improving a patient's prognosis, and an improved chance of long term survival. When lung cancer is detected at an advanced stage with lymph node involvement and osseous metastasis, then, more likely than not, the patient will suffer a premature and preventable death from lung cancer, as presented in the case of Adabell Garner.

53.     For these reasons, the accepted standard of care in Massachusetts from 2013 to the present requires the average nurse practitioner, internal medicine physician, family medicine physician, pulmonologist, and pulmonary and critical care fellow providing care and treatment to patients with a history of smoking to: 1) properly assess the patient's history of smoking, 2) recognize and appreciate a patient's family history puts them at risk for certain cancers, including lung cancer, 3) recognize the signs and symptoms of lung cancer, 4) fully investigate and carry out recommendations in a chest x-ray report, 5) properly assess the patient under the USPSTF criteria for annual lung cancer screening, and 6) offer, order, or recommend a low dose CT scan to screen the patient for lung cancer and/or rule out malignancy.

54.     Additionally, the accepted standard of care in Massachusetts from 2015 to the present requires the average qualified emergency medicine physician and medical resident providing care and treatment to patients to: 1) inform the patient of the need for a follow up evaluation by radiology, 2) properly record radiology recommendations in the medical record, and 3) transmit all critical diagnostic information, including radiology follow up recommendations, to the patient's outpatient providers.

55.     To a reasonable degree of medical certainty, the care and treatment rendered to Adabell Garner by Amanda Luong, N.P. from 10/16/13 to 10/9/18 fell below the accepted standard of care at the time for the average qualified nurse practitioner when Nurse Practitioner Luong failed to: 1) properly assess Ms. Garner's pack year history of smoking, 2) recognize and appreciate Ms. Garner's family history put her at increased risk for developing lung cancer, 3) recognize and appreciate Ms. Garner's 10/16/13 complaints of coughing up blood, as a sign and symptom of lung cancer, 4) fully investigate and carry out the recommendations in Ms. Garner's 5/17/15 chest x-ray report by ordering a CT scan to evaluate for a pulmonary nodule, 5) properly assess Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 6) offer, order, or recommend a low dose CT scan to screen Ms. Garner for lung cancer and rule out malignancy.

56.     As a direct result of Nurse Practitioner Luong's deviations from the accepted standard of care, as outlined above, Ms. Garner's lung cancer went undiagnosed and untreated for several years, resulting in advanced metastatic disease, which resulted in her premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.  Had Nurse Practitioner Luong complied with the accepted standard of care, as outlined above, she would have: 1) properly assessed Ms. Garner's pack year history of smoking, 2) recognized and appreciated Ms. Garner's family history put her at increased risk for developing lung cancer, 3) recognized and appreciated Ms. Garner's 10/16/13 complaints of coughing up blood, as a sign and symptom of lung cancer, 4) fully investigated and carried out the recommendations in Ms. Garner's 5/17/15 chest x-ray report by ordering a CT scan to evaluate for a pulmonary nodule, 5) properly assessed Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 6) offered, ordered, or recommended a low dose CT scan to screen Ms. Garner for lung cancer and rule out malignancy, and, more likely than not, Ms. Garner's lung cancer would have been diagnosed and treated at a much earlier stage when it was still amenable to cure, and, more likely than not, she would not have suffered a premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

57.     To a reasonable degree of medical certainty, the care and treatment rendered to Adabell Garner by Nsa Henshaw, M.D. from 4/1/15 to 10/9/18 fell below the accepted standard of care at the time for the average qualified internal medicine physician when Dr. Henshaw failed to: 1) properly assess Ms. Garner's pack year history of smoking, 2) recognize and appreciate Ms. Garner's family history put her at increased risk for developing lung cancer, 3) properly assess Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 4) offer, order, or recommend a low dose CT scan to screen Ms. Garner for lung cancer.

58.     As a direct result of Dr. Henshaw's deviations from the accepted standard of care, as outlined above, Ms. Garner's lung cancer went undiagnosed and untreated for several years, resulting in advanced metastatic disease, which resulted in her premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.  Had Dr. Henshaw complied with the accepted standard of care, as outlined above, she would have: 1) properly assessed Ms. Garner's pack year history of smoking, 2) recognized and appreciated Ms. Garner's family history put her at increased risk for developing lung cancer, 3) properly assessed Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 4) offered, ordered, or recommended a low dose CT scan to screen Ms. Garner for lung cancer, and, more likely than not, Ms. Garner's lung cancer would have been diagnosed and treated at a much earlier stage when it was still amenable to cure, and, more likely than not, she would not have suffered a premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

59.     To a reasonable degree of medical certainty, the care and treatment rendered to Adabell Garner by Judith Loh, M.D. from 5/18/15 to 10/9/18 fell below the accepted standard of care at the time for the average qualified family medicine physician when Dr. Loh failed to: 1) properly assess Ms. Garner's pack year history of smoking, 2) recognize and appreciate Ms. Garner's family history put her at increased risk for developing lung cancer, 3) fully investigate and carry out the recommendations in Ms. Garner's 5/17/15 chest x-ray report by ordering a CT scan to evaluate for a pulmonary nodule, 4) properly assess Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 5) offer, order, or recommend a low dose CT scan to screen Ms. Garner for lung cancer.

60.     As a direct result of Dr. Loh's deviations from the accepted standard of care, as outlined above, Ms. Garner's lung cancer went undiagnosed and untreated for several years, resulting in advanced metastatic disease, which resulted in her premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.  Had Dr. Loh complied with the accepted standard of care, as outlined above, she would have: 1) properly assessed Ms. Garner's pack year history of smoking, 2) recognized and appreciated Ms. Garner's family history put her at increased risk for developing lung cancer, 3) fully investigated and carried out the recommendations in Ms. Garner's 5/17/15 chest x-ray report by ordering a CT scan to evaluate for a pulmonary nodule, 4) properly assessed Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 5) offered, ordered, or recommended a low dose CT scan to screen Ms. Garner for lung cancer and rule out malignancy, and, more likely than not, Ms. Garner's lung cancer would have been diagnosed and treated at a much earlier stage when it was still amenable to cure, and, more likely than not, she would not have suffered a premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

61.     To a reasonable degree of medical certainty, the care and treatment rendered to Adabell Garner by Julita Mir, M.D. from 5/30/17 to 10/9/18 fell below the accepted standard of care at the time for the average qualified internal medicine physician when Dr. Mir failed to: 1) properly assess Ms. Garner's pack year history of smoking, 2) recognize and appreciate Ms. Garner's family history put her at increased risk for developing lung cancer, 3) properly assess Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 4) offer, order, or recommend a low dose CT scan to screen Ms. Garner for lung cancer.

62.     As a direct result of Dr. Mir's deviations from the accepted standard of care, as outlined above, Ms. Garner's lung cancer went undiagnosed and untreated for several years, resulting in advanced metastatic disease, which resulted in her premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.  Had Dr. Mir complied with the accepted standard of care, as outlined above, she would have: 1) properly assessed Ms. Garner's pack year history of smoking, 2) recognized and appreciated Ms. Garner's family history put her at increased risk for developing lung cancer, 3) properly assessed

Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 4) offered, ordered, or recommended a low dose CT scan to screen Ms. Garner for lung cancer, and, more likely than not, Ms. Garner's lung cancer would have been diagnosed and treated at a much earlier stage when it was still amenable to cure, and, more likely than not, she would not have suffered a premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

63.    To a reasonable degree of medical certainty, the care and treatment rendered to Adabell Garner by Kathryn Harris, M.D. from 6/1/17 to 10/9/18 fell below the accepted standard of care at the time for the average qualified internal medicine physician when Dr. Harris failed to: 1) properly assess Ms. Garner's pack year history of smoking, 2) recognize and appreciate Ms. Garner's family history put her at increased risk for developing lung cancer, 3) properly assess Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 4) offer, order, or recommend a low dose CT scan to screen Ms. Garner for lung cancer.

64.    As a direct result of Dr. Harris's deviations from the accepted standard of care, as outlined above, Ms. Garner's lung cancer went undiagnosed and untreated for several years, resulting in advanced metastatic disease, which resulted in her premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.  Had Dr. Harris complied with the accepted standard of care, as outlined above, she would have: 1) properly assessed Ms. Garner's pack year history of smoking, 2) recognized and appreciated Ms. Garner's family history put her at increased risk for developing lung cancer, 3) properly assessed Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 4) offered, ordered, or recommended a low dose CT scan to screen Ms. Garner for lung cancer, and, more likely than not, Ms. Garner's lung cancer would have been diagnosed and treated at a much earlier stage when it was still amenable to cure, and, more likely than not, she would not have suffered a premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

65.    To a reasonable degree of medical certainty, the care and treatment rendered to Adabell Garner by Vasileia Varvarigou, M.D. from 8/17/17 to 10/9/18 fell below the accepted standard of care at the time for the average qualified internal medicine physician when Dr. Varvarigou failed to: 1) properly assess Ms. Garner's pack year history of smoking, 2) recognize and appreciate Ms. Garner's family history put her at increased risk for developing lung cancer, 3) properly assess Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 4) offer, order, or recommend a low dose CT scan to screen Ms. Garner for lung cancer.

66.    As a direct result of Dr. Varvarigou's deviations from the accepted standard of care, as outlined above, Ms. Garner's lung cancer went undiagnosed and untreated for several years, resulting in advanced metastatic disease, which resulted in her premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.  Had

Dr. Varvarigou complied with the accepted standard of care, as outlined above, he would have: 1) properly assessed Ms. Garner's pack year history of smoking, 2) recognized and appreciated Ms. Garner's family history put her at increased risk for developing lung cancer, 3) properly assessed Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 4) offered, ordered, or recommended a low dose CT scan to screen Ms. Garner for lung cancer, and, more likely than not, Ms. Garner's lung cancer would have been diagnosed and treated at a much earlier stage when it was still amenable to cure, and, more likely than not, she would not have suffered a premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

67.     To a reasonable degree of medical certainty, the care and treatment rendered to Adabell Garner by Kevin Wilson, M.D. on 5/17/15 fell below the accepted standard of care at the time for the average qualified pulmonologist when Dr. Wilson failed to: 1) recognize and appreciate Ms. Garner's family history put her at increased risk for developing lung cancer, 2) properly assess Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 3) offer, order, or recommend a low dose CT scan to screen Ms. Garner for lung cancer.

68.     As a direct result of Dr. Wilson's deviations from the accepted standard of care, as outlined above, Ms. Garner's lung cancer went undiagnosed and untreated for several years, resulting in advanced metastatic disease, which resulted in her premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.  Had Dr. Wilson complied with the accepted standard of care, as outlined above, he would have: 1) recognized and appreciated Ms. Garner's family history put her at increased risk for developing lung cancer, 2) properly assessed Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 3) offered, ordered, or recommended a low dose CT scan to screen Ms. Garner for lung cancer, and, more likely than not, Ms. Garner's lung cancer would have been diagnosed and treated at a much earlier stage when it was still amenable to cure, and, more likely than not, she would not have suffered a premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

69.     To a reasonable degree of medical certainty, the care and treatment rendered to Adabell Garner by Noah Schoenberg, M.D. on 5/17/15 fell below the accepted standard of care at the time for the average qualified pulmonary and critical care fellow when Dr. Schoenberg failed to: 1) recognize and appreciate Ms. Garner's family history put her at increased risk for developing lung cancer, 2) properly assess Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 3) offer, order, or recommend a low dose CT scan to screen Ms. Garner for lung cancer and/or rule out malignancy.

70.     As a direct result of Dr. Schoenberg's deviations from the accepted standard of care, as outlined above, Ms. Garner's lung cancer went undiagnosed and untreated for several years, resulting in advanced metastatic disease, which resulted in her premature and preventable

death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19. Had Dr. Wilson complied with the accepted standard of care, as outlined above, he would have: 1) recognized and appreciated Ms. Garner's family history put her at increased risk for developing lung cancer, 2) properly assessed Ms. Garner under the USPSTF criteria for annual lung cancer screening, and 3) offered, ordered, or recommended a low dose CT scan to screen Ms. Garner for lung cancer, and, more likely than not, Ms. Garner's lung cancer would have been diagnosed and treated at a much earlier stage when it was still amenable to cure, and, more likely than not, she would not have suffered a premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

71.    To a reasonable degree of medical certainty, the care and treatment rendered to Adabell Garner by  Franklin Friedman, M.D. on 5/17/15 fell below the accepted standard of care at the time for the average qualified emergency medicine physician when Dr. Friedman failed to: 1) inform Ms. Garner of her need for a follow up CT scan, 2) properly record radiology's recommendation for a follow up CT scan in the physician chart for the visit, and 3) transmit Ms. Garner's need for a follow up CT scan to her primary care provider.

72.    As a direct result of Dr. Friedman's deviations from the accepted standard of care, as outlined above, Ms. Garner's lung cancer went undiagnosed and untreated for several years, resulting in advanced metastatic disease, which resulted in her premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.  Had Dr. Friedman complied with the accepted standard of care, as outlined above, he would have: 1) informed Ms. Garner of her need for a follow up CT scan, 2) properly recorded radiology's recommendation for a follow up CT scan in the physician chart for the visit, and 3) transmitted Ms. Garner's need for a follow up CT scan to her primary care provider, and, more likely than not, Ms. Garner's lung cancer would have been diagnosed and treated at a much earlier stage when it was still amenable to cure, and, more likely than not, she would not have suffered a premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

73.    To a reasonable degree of medical certainty, the care and treatment rendered to Adabell Garner by  Prianka Chawla, M.D. on 5/17/15 fell below the accepted standard of care at the time for the average qualified medical resident when Dr. Chawla failed to: 1) inform Ms. Garner of her need for a follow up CT scan, 2) properly record radiology's recommendation for a follow up CT scan in the physician chart for the visit, and 3) transmit Ms. Garner's need for a follow up CT scan to her primary care provider.

74.    As a direct result of Dr. Chawla's deviations from the accepted standard of care, as outlined above, Ms. Garner's lung cancer went undiagnosed and untreated for several years, resulting in advanced metastatic disease, which resulted in her premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.  Had

Dr. Chawla complied with the accepted standard of care, as outlined above, she would have: 1) informed Ms. Garner of her need for a follow up CT scan, 2) properly recorded radiology's recommendation for a follow up CT scan in the physician chart for the visit, and 3) transmitted Ms. Garner's need for a follow up CT scan to her primary care provider, and, more likely than not, Ms. Garner's lung cancer would have been diagnosed and treated at a much earlier stage when it was still amenable to cure, and, more likely than not, she would not have suffered a premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

75.     To a reasonable degree of medical certainty, the care and treatment rendered to Adabell Garner by Furman Walls, M.D. on 5/18/15 fell below the accepted standard of care at the time for the average qualified emergency medicine physician when Dr. Walls failed to: 1) properly record radiology's recommendation for a follow up CT scan in the visit summary and 2) transmit Ms. Garner's need for a follow up CT scan to her primary care provider.

76.     As a direct result of Dr. Walls's deviations from the accepted standard of care, as outlined above, Ms. Garner's lung cancer went undiagnosed and untreated for several years, resulting in advanced metastatic disease, which resulted in her premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.  Had Dr. Walls complied with the accepted standard of care, as outlined above, he would have: 1) properly recorded radiology's recommendation for a follow up CT scan in the visit summary and 2) transmitted Ms. Garner's need for a follow up CT scan to her primary care provider, and, more likely than not, Ms. Garner's lung cancer would have been diagnosed and treated at a much earlier stage when it was still amenable to cure, and, more likely than not, she would not have suffered a premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

77.     As a direct result of the substandard care and treatment rendered to her by Amanda Luong, N.P., Nsa Henshaw, M.D., Judith Loh, M.D., Julita Mir, M.D., Kathryn Harris, M.D., Vasileia Varvarigou, M.D., Kevin Wilson, M.D., Noah Schoenberg, M.D., Franklin Friedman, M.D., Prianka Chawla, M.D., and Furman Walls, M.D., Adabell Garner suffered a significant delay in the diagnosis and treatment of her lung cancer, directly resulting in her premature and preventable death from metastatic lung adenocarcinoma and chronic obstructive pulmonary disease on 1/15/19.

## Count I.

1.  The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

2.  The defendant, Noah Schoenberg, M.D., was at all times relevant to this complaint a physician licensed to practice his profession in the Commonwealth of Massachusetts.

3. This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§1346 and 2671 et seq.

4. At all times relevant to this complaint, the defendant, Noah Schoenberg, M.D., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that he was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 5/17/15.

5. On or about 5/17/15, the plaintiff's decedent submitted herself to the care and treatment of the defendant, Noah Schoenberg, M.D., who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

6. The death of Adabell Garner and the damage to her estate, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Noah Schoenberg, M.D., including, but not limited to the following:

   a. Defendant's misrepresentations to the plaintiff's decedent that he was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's decedent's medical condition on or about 5/17/15;

   b. Defendant's failure to adequately and properly diagnose the plaintiff's decedent's medical condition on or about 5/17/15 and his failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize his inability and lack of skill to diagnose and treat the plaintiff's decedent, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of his inability and failure to properly and skillfully provide the plaintiff's decedent with acceptable medical and diagnostic services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing his specialty; and

   e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's decedent's condition and failure to inform and to warn about the treatment of said condition.

7. The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiff, Natasha Lassiter-Garner, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Noah Schoenberg, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count II.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count I above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the carelessness and negligence of the defendant, Noah Schoenberg, M.D., the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

   WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Noah Schoenberg, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count III.

1. The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

2. The defendant, Noah Schoenberg, M.D., was at all times relevant to this complaint a physician licensed to practice his profession in the Commonwealth of Massachusetts.

3. This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§1346 and 2671 et seq.

4. At all times relevant to this complaint, the defendant, Noah Schoenberg, M.D., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that he was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 5/17/15.

5. On or about 5/17/15, the plaintiff's decedent submitted herself to the care and treatment of the defendant, Noah Schoenberg, M.D., who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

6. The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, Noah Schoenberg, M.D., or by the gross negligence of the defendant on or about 5/17/15.

7. The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Noah Schoenberg, M.D., for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count IV.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count III above, as if expressly rewritten and set forth herein.

2.  This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3.  As the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, Noah Schoenberg, M.D., the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Noah Schoenberg, M.D., for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count V.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count I above, as if expressly rewritten and set forth herein.

2.  On or about 5/17/15, the defendant, Noah Schoenberg, M.D., contracted with the plaintiff's decedent to provide professional services related to the plaintiff's decedent's medical care and treatment.

3.  The defendant, Noah Schoenberg, M.D., expressly and impliedly warranted to the plaintiff's decedent that he would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that he would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing his specialty.

4.  On or about 5/17/15, the defendant, Noah Schoenberg, M.D., breached his express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing his specialty, which breach resulted in the death of Adabell Garner.

5.  The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, Noah Schoenberg, M.D.'s breach of express and implied warranties.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Noah Schoenberg, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count VI.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Five of Count V above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the breach of express and implied warranties by the defendant, Noah Schoenberg, M.D., the plaintiff's decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Noah Schoenberg, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count VII.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count I above, as if expressly rewritten and set forth herein.

2. On or about 5/17/15, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

3. On or about 5/17/15, the defendant, Noah Schoenberg, M.D., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

4. On or about 5/17/15, the defendant, Noah Schoenberg, M.D., did not inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent.

5. If the defendant, Noah Schoenberg, M.D., had informed the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent, neither the plaintiff's decedent nor a reasonable person in her position would have elected the defendant's choice of treatment.

6. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff's decedent and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

7. The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, Noah Schoenberg, M.D.'s failure to obtain the informed consent of the plaintiff's decedent.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Noah Schoenberg, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count VIII.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count VII above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the defendant, Noah Schoenberg, M.D.'s failure to inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's treatment, the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Noah Schoenberg, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count IX.

4. The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

5. The defendant, Kevin Wilson, M.D., was at all times relevant to this complaint a physician licensed to practice his profession in the Commonwealth of Massachusetts.

6. This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§1346 and 2671 et seq.

7. At all times relevant to this complaint, the defendant, Kevin Wilson, M.D., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that he was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 5/17/15.

8. On or about 5/17/15, the plaintiff's decedent submitted herself to the care and treatment of the defendant, Kevin Wilson, M.D., who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

9. The death of Adabell Garner and the damage to her estate, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Kevin Wilson, M.D., including, but not limited to the following:

   a. Defendant's misrepresentations to the plaintiff's decedent that he was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's decedent's medical condition on or about 5/17/15;

   b. Defendant's failure to adequately and properly diagnose the plaintiff's decedent's medical condition on or about 5/17/15 and his failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize his inability and lack of skill to diagnose and treat the plaintiff's decedent, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of his inability and failure to properly and skillfully provide the plaintiff's decedent with acceptable medical and diagnostic services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing his specialty; and

   e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's decedent's condition and failure to inform and to warn about the treatment of said condition.

10. The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

   WHEREFORE, the plaintiff, Natasha Lassiter-Garner, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Kevin Wilson, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count X.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count IX above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the carelessness and negligence of the defendant, Kevin Wilson, M.D., the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Kevin Wilson, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XI.

1.  The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

2.  The defendant, Kevin Wilson, M.D., was at all times relevant to this complaint a physician licensed to practice his profession in the Commonwealth of Massachusetts.

3.  This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§1346 and 2671 et seq.

4.  At all times relevant to this complaint, the defendant, Kevin Wilson, M.D., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that he was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 5/17/15.

5.  On or about 5/17/15, the plaintiff's decedent submitted herself to the care and treatment of the defendant, Kevin Wilson, M.D., who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

6.  The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, Kevin Wilson, M.D., or by the gross negligence of the defendant on or about 5/17/15.

7.  The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19.  All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Kevin Wilson, M.D., for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count XII.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XI above, as if expressly rewritten and set forth herein.

2.  This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, Kevin Wilson, M.D., the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Kevin Wilson, M.D., for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count XIII.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count I above, as if expressly rewritten and set forth herein.

2. On or about 5/17/15, the defendant, Kevin Wilson, M.D., contracted with the plaintiff's decedent to provide professional services related to the plaintiff's decedent's medical care and treatment.

3. The defendant, Kevin Wilson, M.D., expressly and impliedly warranted to the plaintiff's decedent that he would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that he would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing his specialty.

4. On or about 5/17/15, the defendant, Kevin Wilson, M.D., breached his express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing his specialty, which breach resulted in the death of Adabell Garner.

5. The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, Kevin Wilson, M.D.'s breach of express and implied warranties.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Kevin Wilson, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XIV.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Five of Count XIII above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3.  As the direct and proximate result of the breach of express and implied warranties by the defendant, Kevin Wilson, M.D., the plaintiff's decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Kevin Wilson, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XV.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count IX above, as if expressly rewritten and set forth herein.

2.  On or about 5/17/15, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

3.  On or about 5/17/15, the defendant, Kevin Wilson, M.D., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

4.  On or about 5/17/15, the defendant, Kevin Wilson, M.D., did not inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent.

5.  If the defendant, Kevin Wilson, M.D., had informed the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent, neither the plaintiff's decedent nor a reasonable person in her position would have elected the defendant's choice of treatment.

6.  The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff's decedent and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

7.  The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, Kevin Wilson, M.D.'s failure to obtain the informed consent of the plaintiff's decedent.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Kevin Wilson, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XVI.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XV above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the defendant, Kevin Wilson, M.D.'s failure to inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's treatment, the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Kevin Wilson, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XVII.

1. The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

2. The defendant, Franklin Friedman, M.D., was at all times relevant to this complaint a physician licensed to practice his profession in the Commonwealth of Massachusetts.

3. This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§1346 and 2671 et seq.

4. At all times relevant to this complaint, the defendant, Franklin Friedman, M.D., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that he was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 5/17/15.

5. On or about 5/17/15, the plaintiff's decedent submitted herself to the care and treatment of the defendant, Franklin Friedman, M.D., who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

6. The death of Adabell Garner and the damage to her estate, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Franklin Friedman, M.D., including, but not limited to the following:

   a. Defendant's misrepresentations to the plaintiff's decedent that he was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's decedent's medical condition on or about 5/17/15;

   b. Defendant's failure to adequately and properly diagnose the plaintiff's decedent's medical condition on or about 5/17/15 and his failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize his inability and lack of skill to diagnose and treat the plaintiff's decedent, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of his inability and

failure to properly and skillfully provide the plaintiff's decedent with acceptable medical and diagnostic services;

d.  Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing his specialty; and

e.  Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's decedent's condition and failure to inform and to warn about the treatment of said condition.

7.  The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiff, Natasha Lassiter-Garner, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Franklin Friedman, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XVII.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XVII above, as if expressly rewritten and set forth herein.

2.  This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3.  As the direct and proximate result of the carelessness and negligence of the defendant, Franklin Friedman, M.D., the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Franklin Friedman, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XVIII.

1.  The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

2.  The defendant, Franklin Friedman, M.D., was at all times relevant to this complaint a physician licensed to practice his profession in the Commonwealth of Massachusetts.

3.  This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§1346 and 2671 et seq.

4. At all times relevant to this complaint, the defendant, Franklin Friedman, M.D., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that he was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 5/17/15.

5. On or about 5/17/15, the plaintiff's decedent submitted herself to the care and treatment of the defendant, Franklin Friedman, M.D., who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

6. The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, Franklin Friedman, M.D., or by the gross negligence of the defendant on or about 5/17/15.

7. The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19.  All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Franklin Friedman, M.D., for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count XIX.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XVIII above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, Franklin Friedman, M.D., the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Franklin Friedman, M.D., for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count XX.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XVII above, as if expressly rewritten and set forth herein.

2. On or about 5/17/15, the defendant, Franklin Friedman, M.D., contracted with the plaintiff's decedent to provide professional services related to the plaintiff's decedent's medical care and treatment.

3. The defendant, Franklin Friedman, M.D., expressly and impliedly warranted to the plaintiff's decedent that he would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that he would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing his specialty.

4. On or about 5/17/15, the defendant, Franklin Friedman, M.D., breached his express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing his specialty, which breach resulted in the death of Adabell Garner.

5. The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, Franklin Friedman, M.D.'s breach of express and implied warranties.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Franklin Friedman, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XXI.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Five of Count XX above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the breach of express and implied warranties by the defendant, Franklin Friedman, M.D., the plaintiff's decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Franklin Friedman, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XXII.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XVIII above, as if expressly rewritten and set forth herein.

2. On or about 5/17/15, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

3. On or about 5/17/15, the defendant, Franklin Friedman, M.D., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

4. On or about 5/17/15, the defendant, Franklin Friedman, M.D., did not inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent.

5. If the defendant, Franklin Friedman, M.D., had informed the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent, neither the plaintiff's decedent nor a reasonable person in her position would have elected the defendant's choice of treatment.

6. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff's decedent and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

7. The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, Franklin Friedman, M.D.'s failure to obtain the informed consent of the plaintiff's decedent.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Franklin Friedman, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XXIII.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XXII above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the defendant, Franklin Friedman, M.D.'s failure to inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's treatment, the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Franklin Friedman, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XXIV.

1. The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

2. The defendant, Prianka Chawla, M.D., was at all times relevant to this complaint a physician licensed to practice her profession in the Commonwealth of Massachusetts.

3. This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§1346 and 2671 et seq.

4. At all times relevant to this complaint, the defendant, Prianka Chawla, M.D., represented and held herself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that she was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 5/17/15.

5. On or about 5/17/15, the plaintiff's decedent submitted herself to the care and treatment of the defendant, Prianka Chawla, M.D., who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

6. The death of Adabell Garner and the damage to her estate, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Prianka Chawla, M.D., including, but not limited to the following:

   a. Defendant's misrepresentations to the plaintiff's decedent that she was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's decedent's medical condition on or about 5/17/15;

   b. Defendant's failure to adequately and properly diagnose the plaintiff's decedent's medical condition on or about 5/17/15 and her failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat the plaintiff's decedent, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of his inability and failure to properly and skillfully provide the plaintiff's decedent with acceptable medical and diagnostic services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing her specialty; and

    e.   Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's decedent's condition and failure to inform and to warn about the treatment of said condition.

7.   The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

    WHEREFORE, the plaintiff, Natasha Lassiter-Garner, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Prianka Chawla, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XXV.

1.   The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XXIV above, as if expressly rewritten and set forth herein.

2.   This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3.   As the direct and proximate result of the carelessness and negligence of the defendant, Prianka Chawla, M.D., the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

    WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Prianka Chawla, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XXVI.

1.   The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

2.   The defendant, Prianka Chawla, M.D., was at all times relevant to this complaint a physician licensed to practice her profession in the Commonwealth of Massachusetts.

3.   This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§1346 and 2671 et seq.

4.   At all times relevant to this complaint, the defendant, Prianka Chawla, M.D., represented and held herself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that she was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 5/17/15.

5. On or about 5/17/15, the plaintiff's decedent submitted herself to the care and treatment of the defendant, Prianka Chawla, M.D., who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

6. The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, Prianka Chawla, M.D., or by the gross negligence of the defendant on or about 5/17/15.

7. The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Prianka Chawla, M.D., for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count XXVII.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XXVI above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, Prianka Chawla, M.D., the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Prianka Chawla, M.D., for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count XXVIII.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XXIV above, as if expressly rewritten and set forth herein.

2. On or about 5/17/15, the defendant, Prianka Chawla, M.D., contracted with the plaintiff's decedent to provide professional services related to the plaintiff's decedent's medical care and treatment.

3.  The defendant, Prianka Chawla, M.D., expressly and impliedly warranted to the plaintiff's decedent that she would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that she would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.

4.  On or about 5/17/15, the defendant, Prianka Chawla, M.D., breached her express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty, which breach resulted in the death of Adabell Garner.

5.  The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, Prianka Chawla, M.D.'s breach of express and implied warranties.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Prianka Chawla, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XXIX.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Five of Count XXVIII above, as if expressly rewritten and set forth herein.

2.  This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3.  As the direct and proximate result of the breach of express and implied warranties by the defendant, Prianka Chawla, M.D., the plaintiff's decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Prianka Chawla, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XXX.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XXVI above, as if expressly rewritten and set forth herein.

2.  On or about 5/17/15, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

3.  On or about 5/17/15, the defendant, Prianka Chawla, M.D., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

4.  On or about 5/17/15, the defendant, Prianka Chawla, M.D., did not inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent.

5.  If the defendant, Prianka Chawla, M.D., had informed the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent, neither the plaintiff's decedent nor a reasonable person in her position would have elected the defendant's choice of treatment.

6.  The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff's decedent and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

7.  The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, Prianka Chawla, M.D.'s failure to obtain the informed consent of the plaintiff's decedent.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Prianka Chawla, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XXXI.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XXX above, as if expressly rewritten and set forth herein.

2.  This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3.  As the direct and proximate result of the defendant, Prianka Chawla, M.D.'s failure to inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's treatment, the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Prianka Chawla, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XXXII.

1.  The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

2. The defendant, Furman Walls, M.D., was at all times relevant to this complaint a physician licensed to practice his profession in the Commonwealth of Massachusetts.

3. This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§1346 and 2671 et seq.

4. At all times relevant to this complaint, the defendant, Furman Walls, M.D., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that he was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 5/18/15.

5. On or about 5/18/15, the plaintiff's decedent submitted herself to the care and treatment of the defendant, Furman Walls, M.D., who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

6. The death of Adabell Garner and the damage to her estate, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Furman Walls, M.D., including, but not limited to the following:

   a. Defendant's misrepresentations to the plaintiff's decedent that he was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's decedent's medical condition on or about 5/18/15;

   b. Defendant's failure to adequately and properly diagnose the plaintiff's decedent's medical condition on or about 5/18/15 and his failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize his inability and lack of skill to diagnose and treat the plaintiff's decedent, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of his inability and failure to properly and skillfully provide the plaintiff's decedent with acceptable medical and diagnostic services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing his specialty; and

   e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's decedent's condition and failure to inform and to warn about the treatment of said condition.

7. The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiff, Natasha Lassiter-Garner, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Furman Walls, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XXXIII.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XXXII above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the carelessness and negligence of the defendant, Furman Walls, M.D., the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Furman Walls, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XXXIV.

1. The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

2. The defendant, Furman Walls, M.D., was at all times relevant to this complaint a physician licensed to practice his profession in the Commonwealth of Massachusetts.

3. This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§1346 and 2671 et seq.

4. At all times relevant to this complaint, the defendant, Furman Walls, M.D., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that he was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 5/18/15.

5. On or about 5/18/15, the plaintiff's decedent submitted herself to the care and treatment of the defendant, Furman Walls, M.D., who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

6. The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, Furman Walls, M.D., or by the gross negligence of the defendant on or about 5/18/15.

7. The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Furman Walls, M.D., for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count XXXV.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XXXIV above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, Furman Walls, M.D., the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Furman Walls, M.D., for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count XXXVI.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XXXII above, as if expressly rewritten and set forth herein.

2. On or about 5/18/15, the defendant, Furman Walls, M.D., contracted with the plaintiff's decedent to provide professional services related to the plaintiff's decedent's medical care and treatment.

3. The defendant, Furman Walls, M.D., expressly and impliedly warranted to the plaintiff's decedent that he would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that he would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing his specialty.

4. On or about 5/18/15, the defendant, Furman Walls, M.D., breached his express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing his specialty, which breach resulted in the death of Adabell Garner.

5.  The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, Furman Walls, M.D.'s breach of express and implied warranties.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Furman Walls, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XXXVII.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Five of Count XXXVI above, as if expressly rewritten and set forth herein.

2.  This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3.  As the direct and proximate result of the breach of express and implied warranties by the defendant, Furman Walls, M.D., the plaintiff's decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Furman Walls, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XXXVIII.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XXXIV above, as if expressly rewritten and set forth herein.

2.  On or about 5/18/15, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

3.  On or about 5/18/15, the defendant, Furman Walls, M.D., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

4.  On or about 5/18/15, the defendant, Furman Walls, M.D., did not inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent.

5.  If the defendant, Furman Walls, M.D., had informed the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent, neither the plaintiff's decedent nor a reasonable person in her position would have elected the defendant's choice of treatment.

6.  The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff's decedent and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

7.  The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, Furman Walls, M.D.'s failure to obtain the informed consent of the plaintiff's decedent.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Furman Walls, M.D., for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XXXIX.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XXXVIII above, as if expressly rewritten and set forth herein.

2.  This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3.  As the direct and proximate result of the defendant, Furman Walls, M.D.'s failure to inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's treatment, the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, Furman Walls, M.D., in an amount to be determined by a jury, together with interest and costs.

## Count XL.

1.  The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

2.  The plaintiff repeats the allegations set forth above as if fully contained herein.

3.  The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §1346(b) and 2671 et seq. and at all times herein Amanda Luong, N.P., Nsa Henshaw, M.D., Judith Loh, M.D., Julita Mir, M.D., Kathryn Harris, M.D., and Vasileia Varvarigou, M.D. were employees of DotHouse Health, Inc., which is a federally funded health clinic that the Department of Health and Human Services has deemed eligible for protection under the Federal Tort Claims Act pursuant to 42 U.S.C. §233.

4.  This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§ 1346 and 2671 et seq.

5.  Jurisdiction is based on 28 U.S.C. § 1346(b), the Federal Tort Claims Act.

6. All statutory conditions precedent to filing suit have been met.

7. At all times relevant to this complaint, the defendant, United States of America, by its agents, servants, or employees, represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that it was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 10/16/13 through 10/9/18.

8. On or about 10/16/13 through 10/9/18, the plaintiff's decedent submitted herself to the care and treatment of the defendant, United States of America, by its agents, servants, or employees, who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

9. The death of Adabell Garner and the damage to her estate, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, United States of America, by its agents, servants, or employees, including, but not limited to the following:

   a. Defendant's misrepresentations to the plaintiff's decedent that it was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's decedent's medical condition on or about 10/16/13 through 10/9/18;

   b. Defendant's failure to adequately and properly diagnose the plaintiff's decedent's medical condition on or about 10/16/13 through 10/9/18, and its failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat the plaintiff's decedent, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and failure to properly and skillfully provide the plaintiff's decedent with acceptable medical and diagnostic services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing its specialty;

   e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's decedent's condition and failure to inform and to warn about the treatment of said condition; and

   f. Defendant's failure to exercise reasonable care in hiring, supervising, employing and/or continuing to employ its agents, servants, or employees.

10. The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XLI.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Thirteen of Count XL above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the carelessness and negligence of the defendant, United States of America, by its agents, servants, or employees, the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, United States of America, in an amount to be determined by a jury, together with interest and costs.

## Count XLII.

1. The plaintiff, Natasha Lassiter, is the duly appointed Personal Representative of the Estate of Adabell Garner and is a resident of Dorchester, Suffolk County, Massachusetts.

2. The plaintiff repeats the allegations set forth above as if fully contained herein.

3. The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §1346(b) and 2671 et seq. and at all times herein Amanda Luong, N.P., Nsa Henshaw, M.D., Judith Loh, M.D., Julita Mir, M.D., Kathryn Harris, M.D., and Vasileia Varvarigou, M.D. were employees of DotHouse Health, Inc., which is a federally funded health clinic that the Department of Health and Human Services has deemed eligible for protection under the Federal Tort Claims Act pursuant to 42 U.S.C. §233.

4. This action is brought to recover for the wrongful death of Adabell Garner for the benefit of her next of kin, pursuant to 28 U.S.C. §§ 1346 and 2671 et seq.

5. Jurisdiction is based on 28 U.S.C. § 1346(b), the Federal Tort Claims Act.

6. All statutory conditions precedent to filing suit have been met.

7. At all times relevant to this complaint, the defendant, United States of America, by its agents, servants, or employees, represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that it was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 10/16/13 through 10/9/18.

8.  On or about 10/16/13 through 10/9/18, the plaintiff's decedent submitted himself to the care and treatment of the defendant, United States of America, by its agents, servants, or employees, who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 1/15/19.

9.  The death of Adabell Garner and the damage to her estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, United States of America, by its agents, servants, or employees, or by the gross negligence of the defendant on or about 10/16/13 through 10/9/18.

10. The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 1/15/19, which is less than two (2) years from the presentment of her administrative tort claim on 9/23/19.  All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count XLIII.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Ten of Count XLII above, as if expressly rewritten and set forth herein.

2.  This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3.  As the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, United States of America, by its agents, servants, or employees, the decedent, Adabell Garner, was caused to suffer consciously up to and until his time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count XLIV.

1.  The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Thirteen of Count XL above, as if expressly rewritten and set forth herein.

2.  On or about 10/16/13 through 10/9/18, the defendant, United States of America, by its agents, servants, or employees, contracted with the plaintiff's decedent to provide professional services related to the plaintiff's decedent's medical care and treatment.

3. The defendant, United States of America, by its agents, servants, or employees, expressly and impliedly warranted to the plaintiff's decedent that it would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that it would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

4. On or about 10/16/13 through 10/9/18, the defendant, United States of America, by its agents, servants, or employees, breached its express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty, which breach resulted in the death of Adabell Garner.

5. The death of Adabell Garner and the damage to his estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, United States of America's breach of express and implied warranties.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XLV.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Five of Count XLIV above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the breach of express and implied warranties by the defendant, United States of America, by its agents, servants, or employees, the plaintiff's decedent, Adabell Garner, was caused to suffer consciously up to and until his time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, United States of America, in an amount to be determined by a jury, together with interest and costs.

## Count XLVI.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Ten of Count XLII above, as if expressly rewritten and set forth herein.

2. On or about 10/16/13 through 10/9/18, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

3. On or about 10/16/13 through 10/9/18, the defendant, United States of America, by its agents, servants, or employees, knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

4. On or about 10/16/13 through 10/9/18, the defendant, United States of America, by its agents, servants, or employees, did not inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent.

5. If the defendant, United States of America, by its agents, servants, or employees, had informed the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent, neither the plaintiff's decedent nor a reasonable person in her position would have elected the defendant's choice of treatment.

6. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff's decedent and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

7. The death of Adabell Garner and the damage to his estate, including, but not limited to her funeral and burial expenses, were the direct and proximate result of the defendant, United States of America, by its agents', servants', or employees' failure to obtain the informed consent of the plaintiff's decedent.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count XLVII.

1. The plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count XLVI above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Adabell Garner.

3. As the direct and proximate result of the defendant, United States of America, by its agents', servants', or employees' failure to inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's treatment, the decedent, Adabell Garner, was caused to suffer consciously up to and until her time of death.

WHEREFORE, the plaintiff, Natasha Lassiter, as duly appointed Personal Representative of the Estate of Adabell Garner, prays judgment against the defendant, United States of America, in an amount to be determined by a jury, together with interest and costs.

PLAINTIFF CLAIMS TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.

Respectfully submitted,
The plaintiff,
By her attorneys,

*/s/ Adam R. Satin*

_____
ANDREW C. MEYER, JR., BBO# 344300
ADAM R. SATIN, BBO# 633069
LYNN I. HU, BBO# 690823
LUBIN & MEYER, P.C.
100 City Hall Plaza
Boston, MA 02108
(617) 720-4447